UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 18 C 412 |
| ) | Hon. Marvin E. Aspen |
| STANDARD CORP., MZS, LLC, ) | |
| JP MORGAN CHASE, N.A., UNKNOWN ) | |
| OWNERS, and NON-RECORD ) | |
| CLAIMANTS, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

The United States, on behalf of the Small Business Administration ("SBA"), brought this foreclosure action against Defendants Standard Corp., JP Morgan Chase, N.A. ("Chase Bank"), unknown owners, and non-record claimants. Presently before us is Standard Corp.'s motion to dismiss the SBA's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Dkt. No. 16.) For the reasons stated below, we deny Standard Corp.'s motion to dismiss.

**BACKGROUND**

The SBA filed the instant lawsuit seeking to foreclose on a $224,000.00 assigned mortgage obtained by MZS, LLC. (Compl. (Dkt. No. 1).) Standard Corp. asserts that MZS first executed a mortgage and note with Chase Bank on June 25, 2010 in the amount of $275,000.00 on real estate located at 506 N. Seymour Avenue in Mundelein, Illinois 60060 ("the property") and recorded the mortgage in the Office of the Recorder of Deeds of Lake County, Illinois on June 30, 2010. (Dkt. No. 17–1.) On March 23, 2011, MZS borrowed $224,000.00 from Illinois

Small Business Growth Corporation ("Growth"), and as security for repayment of the loan, MZS granted Growth a second mortgage to the property. (Compl. ¶¶ 4–5.) The same day, Growth assigned the promissory note for $224,000.00 and the mortgage to the SBA. (*Id.* ¶ 6.) Both the second mortgage and the assignment of the mortgage were recorded in Lake County on March 25, 2011. (*Id.* ¶¶ 5–6.)

Standard Corp. contends that beginning in 2013, the real estate taxes were no longer being paid on the property, and as a result, Lake County obtained a judgment for the 2012 taxes ("Tax Lien") pursuant to Illinois' statutory framework for collecting unpaid real estate taxes, 35 ILCS 200/21–70, *et seq*. (Mem. in Support of Mot. to Dismiss ("Mem.")) (Dkt. No. 17) at 3, 5–7.) Standard Corp. alleges it purchased the 2012 Tax Lien at the Lake County Annual Tax Sale held on November 18, 2013. (Dkt. No. 17–3 at 18.) It asserts that each successive tax year after the tax sale, MZS failed to pay real estate taxes. (Mem. at 3.) Standard Corp. paid the delinquent taxes in 2013, 2014, and 2015 and added the amount to its 2012 Tax Lien. (*Id.*)

Standard Corp. filed a supplemental action in the Circuit Court of Lake County, Illinois on June 1, 2016 seeking a tax deed as the Tax Lien remained unpaid and was not redeemed. (Dkt. No. 17–3.) Standard Corp. contends it provided statutory "Take Notices" pursuant to Illinois law to all owners, occupants, and parties interested in the property, including the SBA and Chase Bank. (Mem. at 4.) Standard Corp. alleges no party redeemed the Tax Lien, and it accordingly filed an application for an order directing the county clerk to issue a tax deed. (*Id.*) After a hearing on December 2, 2016, the Lake County court entered an order of possession and an order directing the county clerk to issue Standard Corp. a tax deed to the property.

(Dkt. Nos. 17–4, 17–5.) Standard Corp. recorded the tax deed on January 3, 2017 in Lake County. (Dkt. No. 17–6.)

SBA alleges that on October 1, 2016, MZS default0ed on the mortgage assigned to the SBA "[b]y virtue of the filing of foreclosure by JP Morgan Chase." (Compl. ¶ 8.) The SBA asserts that due to the default, "maturity of the Note has been accelerated and the entire balance of principal and interest is declared due and payable." (*Id.*) The SBA alleges that as of January 8, 2018, MZS owed the principal sum of $182,177.46, along with accrued interest in the amount of $5,164.73, "plus all costs and expenses of this action and such other amounts as the United States may be required to expend for the care and preservation of its collateral and its lien thereon." (*Id.* ¶ 9.) The SBA also alleges that it is in a first-lien position with its mortgage on the property, a contention Standard Corp. vigorously disputes. (*Id.* ¶ 11; *see also* Mem. at 9–10; Reply (Dkt. No. 22) at 3–4.)

SBA filed the instant complaint on January 19, 2018, seeking a judgment to foreclose its mortgage pursuant to 735 ILCS 5/15–1101, *et seq.* and 28 U.S.C. § 2410(a). Standard Corp. filed a motion to dismiss, arguing the court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine, because the SBA's suit necessarily requires us to review and set aside the Lake County Circuit Court's issuance of a tax deed to Standard Corp. (Mem. at 7–11.) *See also D.C. Ct. App. v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923). Standard Corp. argues that the SBA's mortgage was extinguished by the tax deed, and therefore, the SBA cannot foreclose on the mortgage without overturning the state court's order. (*Id.*) In addition, Standard Corp. argues the SBA's foreclosure action is barred by the Tax Injunction Act, 28 U.S.C. § 1341, because federal courts have no jurisdiction to enjoin state and local tax collection efforts. (*Id.* at 11–12.)

3

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the subject matter jurisdiction of the court. Fed. R. Civ. P. 12(b)(1). Jurisdiction is the "power to decide" and must be conferred upon the federal court. *Matter of Chi., Rock Island & Pac. R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). In determining whether jurisdiction exists, we may "look beyond the jurisdictional allegations of the complaint and consider any evidence submitted on the issue." *Farnik v. F.D.I.C.*, 707 F.3d 717, 721 (7th Cir. 2013). A plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met. *See Lujan v. Def. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992); *see also Farnik*, 707 F.3d at 721.

**ANALYSIS**

**I. ROOKER-FELDMAN PRECLUSION**

Under the *Rooker-Feldman* doctrine, the "lower federal courts lack subject matter jurisdiction to review state court decisions; only the Supreme Court has appellate jurisdiction to reverse or modify a state court judgment." *Holt v. Lake Cty. Bd. of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005). The doctrine is narrow and "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521–22 (2005); *see also Lance v. Dennis*, 546 U.S. 459, 464, 126 S. Ct. 1198, 1201 (2006). "The doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *accord Beth-El All Nations Church v. City of Chi.*, 486 F.3d 286, 292 (7th Cir. 2007) ("*Rooker–Feldman* also applies to bar federal claims that

4

are 'inextricably intertwined' with a state-court judgment, except where the plaintiff lacked a reasonable opportunity to present those claims in state court.").

However, the *Rooker-Feldman* doctrine is inapplicable here, where the SBA was indisputably not a party to the underlying state court action. The doctrine only pertains to claims brought by "state-court losers." *Exxon Mobil*, 544 U.S. at 284, 125 S. Ct. at 1521–22. (*See also* Reply at 2.) *Rooker-Feldman* does not foreclose federal jurisdiction where the party seeking to invoke the court's jurisdiction was not a party in the state court action. *Lance*, 546 U.S. at 464, 126 S. Ct. at 1201 ("[W]e have held *Rooker-Feldman* inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding." (citing *Johnson v. De Grandy*, 512 U.S. 997, 1006, 114 S. Ct. 2647, 2654 (1994)); *Sheetz v. Norwood*, 608 F. App'x 401, 404 (7th Cir. 2015) ("The doctrine does not apply to lawsuits by persons who . . . were not a party to the state-court proceeding."); *Kan. City S. Ry. Co. v. Koeller*, 653 F.3d 496, 504 (7th Cir. 2011) (finding plaintiffs were "not present at the state court's hearing, nor were they a 'party' there," and therefore, "they cannot be characterized as 'state-court losers' complaining of a judgement rendered against them"); 18B Charles Alan Wright, et al., Fed. Prac. & Proc. § 4469.1 (2d ed.) (explaining the "*Rooker-Feldman* doctrine does not defeat federal jurisdiction when a nonparty brings the action, even though decision may involve matters inextricably intertwined with a state judgment"). Moreover, the doctrine does not bar actions by non-parties to the state court judgment even if they were in privity with a party to the judgment or had an opportunity to intervene in the state court proceedings. *See, e.g.*, *Lance*, 546 U.S. at 466, 126 S. Ct. at 1202; *Shelby Cty. Health Care Corp. v. S. Farm Bureau Cas. Ins. Co.*, 855 F.3d 836, 841 (8th Cir. 2017); *Carmona v. Carmona*, 603 F.3d 1041, 1050–52, n.5 (9th Cir. 2010).

There is no dispute that Standard Corp. did not serve the SBA in the tax deed action in state court, and it did not seek or obtain a waiver of sovereign immunity from the United States. (Resp. (Dkt. No. 21) at 2; Reply at 2.) Standard Corp. asserts it provided notice of the tax deed action to the SBA via the statutory "Take-Notices" delivered to the county clerk and sheriff, and argues the SBA therefore "not only had the right to pay the real estate taxes pursuant to the terms of its mortgage but also had a reasonable opportunity to raise a claim in state court." (Reply at 2.) However, as the SBA points out, while the United States has consented to waive sovereign immunity under 28 U.S.C. § 2410(a) in cases seeking to "foreclose a mortgage or other lien upon . . . real or personal property on which the United States has or claims a mortgage or other lien," Standard Corp. never properly served the United States under § 2410(b), and therefore, it did not secure a waiver of sovereign immunity. 28 U.S.C. § 2410(a)(2); *see also id.* § 2410(b) (providing that in "actions in the State courts service upon the United States shall be made by serving the process of the court with a copy of the complaint upon the United States attorney for the district in which the action is brought . . . and by sending copies of the process and complaint, by registered mail, or by certified mail, to the Attorney General of the United States at Washington, District of Columbia"). As it is undisputed the SBA was never made a party to the state court action, the *Rooker-Feldman* doctrine is inapplicable, and does not deprive the court of subject matter jurisdiction. *Lance*, 546 U.S. at 464, 126 S. Ct. at 1201; *Johnson*, 512 U.S. at 1006, 114 S. Ct. at 2654. Accordingly, Standard Corp.'s motion to dismiss is denied on this basis.

## II.   TAX INJUNCTION ACT

Standard Corp. also argues we lack subject matter jurisdiction based on the Tax Injunction Act. (Mem. at 11.) The Tax Injunction Act provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a

plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Standard Corp. contends that a tax lien sale is a mode of tax collection, and "an action to enjoin it[,] or declare it illegal, or rescind it" is barred by the statute. (Mem. at 11 (quoting *Wright v. Pappas*, 256 F.3d 635, 636 (7th Cir. 2001).)

SBA argues that Standard Corp.'s reliance on the Tax Injunction Act is misplaced, because even if the state court action was a form of tax collection, § 1341 does not act as a restriction upon suits by the United States to protect itself and its instrumentalities from unconstitutional state exactions. (Resp. at 4.) We agree, and Standard Corp. makes no attempt to argue otherwise in its Reply brief. It is a "settled rule that the Tax Injunction Act is not a constraint on federal judicial power when the United States sues to protect itself and its instrumentalities from state taxation." *Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520 U.S. 821, 827, 117 S. Ct. 1776, 1780 (1997); *see also Dep't of Emp't v. United States*, 385 U.S. 355, 358, 87 S. Ct. 464, 466–67 (1966) ("For we conclude, in accord with an unbroken line of authority, and convincing evidence of legislative purpose, that § 1341 does not act as a restriction upon suits by the United States to protect itself and its instrumentalities from unconstitutional state exactions."); *DeKalb Cty. v. Fed. Hous. Fin. Agency*, 741 F.3d 795, 804 (7th Cir. 2013); *United States v. Champaign Cty., Illinois*, 525 F.2d 374, 376 (7th Cir. 1975). Therefore, the Tax Injunction Act is not a bar to our subject matter jurisdiction in this case, and we deny Standard Corp.'s motion to dismiss.

**CONCLUSION**

For the foregoing reasons, we deny Standard Corp.'s motion to dismiss. (Dkt. No. 16.) It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: September 17, 2018
 Chicago, Illinois